**RECEIVED**

DEC 22 2006

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

STEPHEN NOWAK, ROBERT NOWAK,
And CHRISTINA GORNATI, and On
Behalf of Themselves and All Others
Similarly Situated,

      Plaintiffs,

v.

INNOVATIVE AFTERMARKET
SYSTEMS, L.P.,
SUNTRUP HYUNDAI, INC., and
D.J.S./C.M.S., INC., d/b/a SUNTRUP KIA,

      Defendants.

Civil Action No. 06CV01622 ERW

## DEFENDANT IAS' OPPOSITION TO MOTION FOR REMAND

### Preliminary Statement

Defendant Innovative Aftermarket Systems, L.P. ("IAS") submits this opposition to

Plaintiffs' Motion for Remand. Plaintiffs filed a proposed class action against IAS and two

Missouri automobile dealerships. IAS timely removed this proposed class action pursuant to the

Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Plaintiffs have moved to

remand, arguing that (1) CAFA's $5,000,000 jurisdictional requirement is not met, and (2) that a

narrow statutory exception to federal jurisdiction for "local controversies" is applicable here.

Neither argument is correct. As demonstrated below, CAFA's jurisdictional amount is

met either by using numbers contained in Plaintiffs' Class Action Petition ("Complaint") or by

data provided from IAS's business records. Plaintiffs fail to meet their burden in establishing the

several requirements needed for the "local controversy" exception to apply. The Court should

deny the Motion for Remand.

Plaintiffs allege breach of contract and other claims on behalf of a proposed class of

Missouri purchasers of contracts known as "Debt Relief Waiver Addendums." These contracts

are voluntary addendums to automobile purchase contracts. As a dispositive matter, IAS intends

to prove that the contracts were between the Plaintiffs and Missouri automobile dealerships—not

with IAS, which only serviced the contracts. Because IAS has no privity with Plaintiffs and

made no representations to them, and since the dealerships are not agents of IAS, Plaintiffs do

not have standing to sue IAS. However, before addressing the standing issue, the Court must

determine whether it has subject matter jurisdiction under CAFA. Taking the allegations in the

Complaint as true only for purposes of determining whether removal was proper, Plaintiffs'

alleged facts in this case make it clear that this case is just the type of proposed class action that

CAFA was designed to address.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The named Plaintiffs, the Nowaks and Ms. Gornati, are Missouri citizens who purchased,

respectively, cars at Suntrup Hyundai and Suntrup Kia. Complaint ¶¶ 25, 48. They also

purchased from their respective dealerships a contract called a "Debt Relief Waiver Addendum"

("Addendum"). In the event that the purchased vehicles were stolen or totaled in an accident,

these Addendums—also informally known as "GAP Waivers"—provided for a payment to the

individual Plaintiffs' automobile lender in the amount specified in the Addendums between the

loan balance and the vehicle's actual cash value as determined by the contract. Declaration of

Jennifer LePage in Support of Notice of Removal dated November 7, 2006 ("LePage Decl."), ¶

3. IAS does not sell these Addendums to consumers, but services the dealer's agreements with

their customers by processing the claims. *Id.*

2

IAS's records show that approximately 38,150 Addendums were sold by over 115 Missouri dealerships between 2000-2006, and that Suntrup Hyundai and Suntrup Kia accounted for a fraction of the total GAP Waiver sales. Supplemental Declaration of Jennifer LePage in Support of Removal dated December 21, 2006 ("Supplemental Decl.") ¶¶ 4-5. Suntrup Hyundai accounted for 4,393 sales (11.5%) and Suntrup Kia accounted for 880 sales (2.3%). *Id.* at ¶ 5. The particular form of the Addendum purchased by the individual named Plaintiffs was the "G2 form," which contains terms and language similar to other forms used by Missouri dealers who offer GAP Waiver contracts and use IAS to service those contracts. Complaint ¶ 4; Supplemental Decl. ¶¶ 6-7.

Plaintiffs filed their Class Action Petition on October 3, 2006 in the Missouri Circuit Court for the Twenty Second Judicial Circuit (City of St. Louis). Plaintiffs allege, among other things, that the Addendums contain deceptive language in violation of the Missouri Merchandising Practices Act, Chapter 407 RSMo; that Defendants IAS and the two Missouri dealerships made affirmative misrepresentations; and that Defendants breached their contractual duties under the Addendums by failing to calculate the payments in the manner that Plaintiffs believe is appropriate.

Defendant IAS removed this action on November 7, 2006 and filed an Original Answer on November 17, 2006. Plaintiffs moved to remand on December 5, 2006. On December 12, 2006, this Court extended the time for IAS to respond to allow the parties to conduct limited discovery. The Court also extended the time for Plaintiffs to file a reply to January 9, 2007.

3

## II. THE AMOUNT IN CONTROVERSY EXCEEDS CAFA'S JURISDICTIONAL MINIMUM

Plaintiffs do not dispute that removal was timely, or that many of CAFA's requirements (such as minimal diversity and a proposed class of at least 100 persons) have been met. Plaintiffs contend that the amount in controversy does not exceed $5,000,000—but when punitive damages, attorney's fees, Plaintiffs' own figures, and the 38,150 GAP Waiver customers in Missouri are considered, the jurisdictional requirement is easily exceeded.

### A. Legal Standard

CAFA requires that the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). Where the Plaintiffs have not pled a specific amount of damages, the removing defendant must show, by preponderance of the evidence, that there is a "reasonable probability" that the amount in controversy exceeds CAFA's $5,000,000 jurisdictional requirement. *The Home Depot, Inc. v. Rickher*, 06-8006, 2006 WL 1727749, at *1 (7th Cir. May 22, 2006); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005); *Musgrave v. Aluminum Co. of America, Inc.*, No. 3:06-CV-29, 2006 WL 1994840, at *2 (S.D. Ind. July 14, 2006); *Fiore v. First Am. Title Ins. Co.*, No. 05-CV-474, 2005 WL 3434074, at *2 (S.D. Ill. Dec. 13, 2005).[1]

Other courts have phrased the jurisdictional requirement test as requiring the defendant to show by "preponderance of the evidence" that CAFA's amount in controversy has been met. *See, e.g.*, *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 683 (9th Cir. 2006). The amount in controversy includes monetary damages, attorney's fees, and any costs that a

---

[1] Each of these cases addressed the standard for showing the amount in controversy specifically with regards to CAFA. Plaintiffs argue that the "reasonable probability" standard does not apply within the Eighth Circuit, but cite for support only Eighth Circuit cases decided *before* CAFA's enactment. *See* Pl. Mem. at 3 (citing *James Neff Kramper Family Farm Partnership v. IBP, Inc.*, 393 F.3d 828, 831 (8th Cir. 2005); *In re Minnesota Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834 (8th Cir. 2003)). The Eighth Circuit has not yet addressed the standard for determining the amount of controversy under CAFA.

4

Defendant incurs in complying with declaratory or injunctive relief. *Home Depot*, 2006 WL 1727749, at *1. Plaintiffs, however, without citing any supporting precedent, urge the Court to adopt an unreasonable interpretation of the standard, stating:

> Unless and until defendant IAS meets its burden of laying a proper evidentiary foundation by producing the *actual claims data*, complete with the GAP form of *each claim*, the amount of the payoff on *each vehicle*, the basis for *any* denials or reductions in claims and the amount waived ... the Court has no basis to conclude reasonably that Defendant has met its burden of establishing by a preponderance of the evidence that the amount in controversy requirement has been satisfied.

Plaintiffs' Memorandum in Support of Its Motion for Remand ("Pl. Mem."), at 9 (emphasis added). Plaintiffs essentially argue that Defendants must *prove*, for purposes of remand, what damages Plaintiffs will recover by inundating the Court with *thousands* of pages of materials.

CAFA jurisdiction does not require such proof. The court in *Moda v. Priceline.com*, No. 06-56301, 2006 WL 3327871 (9th Cir. Nov. 16, 2006), rejected a similar argument that the removing defendant had to provide a list of allegedly fraudulent hotel ratings and the corresponding prices differences to prove the amount of damages under CAFA. The court held that "[w]e do not predict what [plaintiff] *will* recover, only what he *could* recover," and that "a defendant's removal is proper where evidence allows a court to determine the extent of the loss which it might incur if plaintiff is successful." *Id.* at *1 (emphasis in original, internal citation and quotation marks omitted); *see also Brill*, 427 F.3d at 448 (noting that "suits are removed on the pleadings, long before 'evidence' or 'proof' have been adduced."). Even the Ninth Circuit's "preponderance of the evidence" standard is satisfied if the evidence points to what Plaintiffs *could* recover. *Id.*

In any event, both the Complaint's allegations and the evidence provided by IAS establishes the amount in controversy under either the "reasonable probability" or "preponderance of the evidence" standards.

5

## **B.** **Jurisdictional Requirement Is Met By Plaintiffs' Allegations Alone**

As explained in the Notice of Removal, Plaintiffs' Complaint alleges that the named

Plaintiffs' claims, which average $3,730.62, are typical of class members, and that there are

hundreds if not thousands of class members. Complaint ¶¶ 41-47, 64-70, 72, 74. Plaintiffs argue

that the $3,730.62 average claim that IAS has cited is "illogical" because that number is different

from the good faith estimate of the average claim provided in the LePage Declaration.[2] Pl. Mem.

at 5. But the Plaintiffs have alleged that their claims are typical, and IAS's use of the average of

the two claims is actually conservative. For purposes of removal, IAS is entitled to treat

Plaintiffs' allegations that named Plaintiff Gornati's claim of $6,716.83 in monetary damages

(plus consequential damages, punitive damages, and attorney's fees) is "typical of the claims of

the class" as true for purposes of calculating the average claim per class member. *See* Complaint

¶¶ 64-70, 74. This allegation provides a reasonable basis for the Court to conclude that—given

the purport class size of "at least hundreds, if not thousands, of individuals"—the jurisdictional

amount is met. *Id.* at ¶ 72.

This case resembles *Moda v. Priceline*, where the plaintiff initially alleged in his

complaint that the defendant's overcharge per room was up to 50%, but then backtracked from

this claim when seeking remand by arguing that instead the *defendant* had to prove a 50%

overcharge per room before using this figure to calculate the amount in controversy. 2006 WL

3327871, at *1. The *Moda* court rejected this argument, noting that it was possible the plaintiff

could ultimately prove a 50% overcharge as alleged in the complaint. *Id.* Similarly, here the

Plaintiffs *could* ultimately recover the $6,716.83 that Plaintiffs allege for Ms. Gornati or the

$3,730.62 average claim per class member alleged in the Complaint, and the relevant legal

---

[2] Plaintiffs' stated reliance upon the LePage Declaration contradicts their later assertion that the Declaration is "misleading" and "inadmissible," and Plaintiffs should be estopped from objecting to the LePage Declaration when they, in fact, rely themselves upon it. Pl. Mem. at 6.

6

standard does not require IAS to prove that Plaintiffs will, in fact, recover either of those
amounts.

Even if the average claim were assumed to be $1,093 (as the Plaintiffs suggest in their
footnote 3), assuming attorney's fees of $350,000 and punitive damages estimated at 200% of
actual damages,[3] the class would only need to include 1,419 individuals—well within the
purported class size of "thousands."[4]

## C.    Jurisdictional Requirement Is Also Met By Evidence Provided by Defendant IAS

IAS submitted the Declaration of Ms. LePage (Vice President of Operations for IAS) as
affirmative evidence that the amount in controversy exceeds $5 million. The amount she
calculated ($5,015,693) does not include any attorney's fees or punitive damages, which as noted
above, would significantly increase the amount in controversy. Plaintiffs have not provided *any*
alternative calculation of the amount in controversy nor any affirmative evidence that contradicts
the LePage Declaration. Instead, Plaintiffs attack the admissibility and reliability of the LePage
Declaration and argue that Ms. LePage considers forms other than the G2 forms. *See* Pl. Mem.
at 6-10.

Plaintiffs' objections of lack of evidentiary foundation are unfounded—particularly since
this is a motion for remand and not a jury trial. Ms. LePage says that she has personal
knowledge of the relevant facts as the Vice President of Operations of IAS. Moreover, the

---

[3] Plaintiffs do not dispute that attorney's fees and punitive damages are authorized under Missouri statute, and thus
must be included in the amount in controversy. *See* Removal Notice ¶ 7. In *Buller v. Owner Operator Independent
Driver Risk Retention Group, Inc.*, No. 05 Civ. 164, 2006 WL 3360304, at *4 (S.D. Ill. July 27, 2006), the court
assumed constitutionally permissible punitive awards in a ratio of two to three times actual damages, and concluded
that a "very small class asserting similar claims would have, in the aggregate, damages in excess of $5 million."
Plaintiffs assert, without documentation, that the assumed $350,000 attorney's fee is unreasonable. The $350,000
fee represents only 7.5% of the recovery. IAS reserves the right to challenge the appropriateness of any attorney's
fees or punitive damages figure.

[4] The calculations are as follows: (1,419 x $1,093) + $350,000 + (1,419 x $1,093 x 2) = $5,002,901.

Supplemental Declaration provides additional foundation. It states that Ms. LePage is an industry veteran with eighteen years experience (with four years at IAS), that she is personally familiar with the data and industry standards, and that she relied upon business records (attached to the Supplemental Declaration) for her calculations. Supplemental Decl. at ¶¶ 2-4.[5]

Next, Plaintiffs attack the reliability of the LePage Declaration, arguing that it fails to set forth a methodology and attach supporting documents. These concerns are addressed in the Supplemental Declaration, which attaches as exhibits the raw data and worksheets used to compute the $5,015,693 figure. Plaintiffs' asserted standard of proof—that IAS must produce the GAP form and additional information for *each* of the 38,150 customers in Ms. LePage's calculations (*see* Pl. Mem. at 9)—is unwarranted as shown above.

Finally, Plaintiffs argue that Ms. LePage's calculations take into account contract forms other than the G2 form. Plaintiffs in their remand papers limit their purported class to "the G2, which was sold to both the Nowaks and Ms. Gornati, and any forms substantially identical to it."[6] Pl. Mem. at 7. Even though Plaintiffs' limit their purported class to the G2 forms, the effect of their requested "declaratory and injunctive relief prohibiting defendant IAS from engaging in the conduct alleged above in the future" will necessarily affect other contracts used by IAS. Complaint ¶ 120.

The "conduct" at issue is the allegedly "deceptive and misleading" language of the contract and the failure to "calculate the outstanding deficiency balance" in accordance with Plaintiffs' desired approach. *See id.* at ¶¶ 29-34, 46 for the Nowaks' claim, and at ¶¶ 52-57, 69

---

[5] Also, as noted previously, Plaintiffs should also be estopped from objecting to the admissibility of the LePage Declaration because they rely upon it themselves in their arguments to the Court.

[6] This limitation is not clear from the Complaint, which asserted "a class consisting of all Missouri residents who are purchasers of Addendums issued by defendant IAS and whose GAP coverage was denied or reduced despite the existence of an outstanding deficiency." Complaint ¶ 71. But Defendant IAS accepts Plaintiffs' purported class member definition as Missouri residents receiving the G2 forms or forms substantially identical to it.

8

for Ms. Gornati's claim. The other contract forms provided to Missouri residents include language substantially identical to the language Plaintiffs allege is "deceptive and misleading." *Compare, e.g.*, Complaint ¶ 52 (quoting the G2 form) *with* Pl. Mem. Exhibits F through M (containing other forms with substantially identical language).

Thus, because the requested declaratory or injunctive relief would affect other forms used by Missouri dealers that have this allegedly "deceptive and misleading" language and would also affect the calculations of the "outstanding deficiency balance" for these other forms, the financial impact related to all other affected forms must also be included in the amount in controversy. *See* Supplemental Decl. ¶ 7.[7]

## D. Nearly All 38,150 GAP Waiver Customers in Missouri Should Be Considered in Calculating the Amount in Controversy

The LePage Declaration based its $5,015,693 figure on just the portion of customers who, based on actuarial data, submitted or will submit claims on their GAP Waiver contracts. LePage Decl. ¶¶ 4-6. However, because Plaintiffs are alleging that most of the forms used by Missouri dealerships violate the Missouri Merchandising Practices Act, almost all of the 38,150 customers receiving such forms should be considered for purposes of calculating the amount in controversy.[8] In *Home Depot*, 2006 WL 1727749 at *1, the Seventh Circuit held in a case alleging that defendant Home Depot failed to disclose that the damage waivers it sold were optional, that the *possibility* that Home Depot could be enjoined from selling damage waivers,

---

[7] Plaintiffs in attacking the LePage Declaration also rely on *Ongstad v. Piper Jaffray & Co.*, 407 F. Supp. 2d 1085 (D.N.D. 2006), which is easily distinguished because, unlike this case, (1) there was no statutory basis to consider punitive damages and attorney's fees, and (2) the defendant's affidavit only listed the total value of brokerage account assets, and made no correlation between the value of the assets and the amount of damages allegedly sustained. *Id.* at 1092.

[8] Plaintiffs have indicated that certain forms used by Missouri dealerships are not problematic, but do not specify which forms. Plaintiffs attach several examples of forms as exhibits to their Motion for Remand, but do not state whether these forms are unobjectionable. *See* Plaintiffs' Motion for Remand, Exhibits E-M. However, forms used in Missouri generally contain language similar to the G2 form. Supplemental Decl. at ¶ 7.

9

costing it $1.2 million per year, was sufficient to establish $5 million "in controversy" for purposes of CAFA. The Seventh Circuit explicitly rejected the lower court's ruling that Home Depot was required to first show that it would be enjoined from selling *all* damage waivers. *Id.* at *2.

Judge Wright of the Western District of Missouri adopted the Seventh Circuit's reasoning, and held that the plaintiff's requested injunctive relief preventing Home Depot from "continuing to engage in conduct" alleged to be unlawful meant that the economic impact of an injunction barring the sale of *all* damage waivers should be considered for the amount in controversy. *Saab v. Home Depot U.S.A. Inc.*, No. 06 Civ. 319, 2006 WL 1877077, at *1, *3-*4 (W.D. Mo. July 6, 2006). Similarly, here the possibility that *all* the GAP Waiver contract forms sold in Missouri may be subject to injunctive or declaratory relief means that the amount in controversy would be *significantly higher* than Ms. LePage's conservative calculations—and well over the $5 million jurisdictional requirement.[9]

## III. THE "LOCAL CONTROVERSY" EXCEPTION DOES NOT APPLY

This dispute is not a "local controversy" because the primary defendant is located in Texas, and the two Missouri dealerships are not "significant" defendants because they account for a small fraction of the 38,150 GAP Waivers sold by over 115 dealers. Additionally, a similar proposed class action was previously filed against IAS.

### A. Summary of the "Local Controversy" Exception

CAFA provides two "local controversy" exceptions to federal jurisdiction in the statute. The first is a discretionary exception, which the Plaintiffs do not argue is appropriate here. *See*

___

[9] Just using either of the named Plaintiffs' own claims ($744.40 or $6,716.83) and multiplying it by the 38,150 customers figure yields respectively an amount in controversy of $28.4 million or $256 million, well in excess of the $5 million jurisdictional requirement.

28 U.S.C. § 1332(d)(3) ("A district court may … decline to exercise jurisdiction ….") The second is a mandatory exception if certain conditions are met. *See* 28 U.S.C. § 1332(d)(4) ("A district court shall decline to exercise jurisdiction …."). The mandatory exception applies if two-thirds of the plaintiffs and *all* of the primary defendants are citizens of the State in which the action was originally filed—a requirement not met here. 28 U.S.C. § 1332(d)(4)(B).

Alternatively, § 1332(d)(4) applies if *all* of the conditions in its subpart (A) are met. As shown below, Plaintiffs will not be able to show that: (1) a Missouri defendant can offer "significant relief" to the proposed class, (2) a Missouri defendant's conduct forms a "significant basis" for all the class claims, and (3) a class action asserting "similar factual allegations" against IAS was not previously filed. *See* 28 U.S.C. § 1332(d)(4)(A).

## B. Plaintiffs Have the Burden to Establish that the "Local Controversy" Exception Applies

The "local controversy" exception to CAFA's federal jurisdiction is a "narrow one, with all doubts resolved 'in favor of exercising jurisdiction over the case'"; Plaintiffs bear the burden of establishing that this exception applies. *Evans v. Walter Industries*, 449 F.3d 1159, 1163-64 (11th Cir. 2006) (quoting Senate Report on CAFA, No. 109-14 at 42).

Plaintiffs in their footnote 7 argue that the removing defendant has the burden of establishing the "local controversy" exception does not apply, citing just two district court cases in California for support. *See Lao v. Wickes Furniture Co.*, No. 06 Civ. 448, 2006 WL 2879763 (C.D. Cal. Oct. 4, 2006); *Serrano v. 180 Connect*, No. 06 Civ. 1363, 2006 WL 2348888 (N.D. Cal. Aug. 11, 2006). These opinions are apparently the only two supporting this minority position, and later cases have called them into question. *See, e.g., Mattera v. Clear Channel Communications, Inc.*, No. 06 Civ. 1878, 2006 WL 3290836, *9 (S.D.N.Y. Nov. 14, 2006). In

11

contrast, the circuit courts that have addressed this issue are unanimous in holding that plaintiffs bear the burden of establishing the "local controversy" exception applies. *See Hart v. FedEx Ground Package System*, 457 F.3d 675, 680 (7th Cir. 2006); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006); *Evans v. Walter Industries*, 449 F.3d 1159, 1164 (11th Cir. 2006).

## C.    No Missouri Defendant can Offer "Significant Relief" to All Purported Class Members or Has Conduct Forming a "Significant Basis" for All Class Claims

Plaintiffs argue that they meet the "significant relief" and "significant basis" requirements of § 1332(d)(4)(A) because they asserted "similar Counts" and "prayed for identical relief" from Missouri defendants Suntrup Hyundai and Suntrup Kia as from Texas defendant IAS. Pl. Mem. at 12. However, the statute provides that there must be a Missouri defendant "from who significant relief is sought by *members of the plaintiff class*"—not by just "*a member*" of the class. *See Eakins v. Pella Corp.*, No. 05 Civ. 224-BO(2), 2006 WL 2930110, *2 (E.D.N.C. Sept. 27, 2006) (quoting Senate Report on CAFA stating that significant relief "must be sought by the class (as opposed to just a subset of the class membership)"); *Robinson v. Cheetah Transportation*, No. 06 Civ. 5, 2006 WL 468820, *3 (W.D.La. Feb. 27, 2006) (citing same report).

Suntrup Hyundai and Suntrup Kia are just *two* out of over 115 Missouri dealers selling GAP Waivers, and together account for less than 14% of the GAP Waiver contract sales. *See* Supplemental Decl. ¶¶ 4-5. Thus, these two dealerships cannot offer "significant relief" to the

12

other 86% of the proposed class or have conduct that forms a "significant basis" for claims of customers who purchased GAP Waivers from other dealerships.[10]

**D.    The Legislative History Makes Explicitly Clear that Plaintiffs Do Not Meet the "Significant Relief" or "Significant Basis" Requirements**

Congress foresaw that plaintiffs may seek to use the narrow local controversy exception to circumvent the purposes of CAFA.  The Senate Report on CAFA thus provided an example of a class action lawsuit against an out-of-state auto manufacturer and a few in-state auto dealers as *not* qualifying for the local controversy exception. *See* Senate Report No. 109-14 at 40-41.  As one court summarized the Senate Report:

> The report illustrates the application of the second prong "significant basis" and "significant relief" language through an example.  The example is a class action brought in Florida, on behalf of Floridians against an out-of-state automobile manufacturer and a few in-state dealers, alleging a products liability defect.  The vehicle was sold in all fifty states.  The defendant dealers' conduct does not form a significant basis of the claims or from whom significant relief is sought, because the retailer is "small change compared to what they are seeking from the manufacturer."

*Eakins*, 2006 WL 2930110, \*2 (internal citation omitted).  Similarly here, the Missouri dealers' conduct does not meet the "significant relief" and "significant basis" requirements of the local controversy exception.

**C.    A Prior Similar Class Action Was Filed Against Defendant IAS**

As noted in the Notice of Removal, a prior class action petition was filed asserting similar factual allegations against Defendant IAS within the last three years, and thus the local controversy exception is inapplicable.  Notice of Removal ¶ 9 (citing *Soloy* class action petition).  Plaintiffs respond by claiming the *Soloy* case was about the "UG2 Addendum," while this case

---

[10] In fact, neither Suntrup Hyundai and Suntrup Kia can even offer "significant relief" to both sets of named Plaintiffs because each dealership only had dealings with one set of named Plaintiffs (i.e., either the Nowaks or Ms. Gornati).  Complaint ¶¶ 11-12.  Similar arguments apply to the "significant basis" requirement.

13

involves the "G2 Addendums." Pl. Mem. at 14. However, the actual "class action allegations" in both cases are virtually identical. *Compare* Soloy Class Action Petition (Pl. Mem. Exhibit P) ¶¶ 5, 36-44 *with* Complaint ¶¶ 9, 71-79. Both class action petitions allege that IAS failed to appropriately calculate payments on GAP Waiver claims. Moreover, the statute does not require that the factual allegations be identical—merely that there are "similar factual allegations." 28 U.S.C. § 1332(d)(4)(A)(ii). Plaintiffs have the burden of proof in showing that the factual allegations in the two petitions are *not* similar—and all doubts are resolved "in favor of exercising jurisdiction over the case." *Evans*, 449 F.3d. at 1163. Any reasonable reading of the two petitions establishes that Plaintiffs cannot meet their burden.[11]

## E.  Not all Primary Defendants Are Citizens of Missouri

Subpart B of 28 U.S.C. § 1332(d)(4) requires that *all* primary defendants be citizens of the State in which the action was originally filed. As noted in the Notice of Removal, § 1332(d)(4)(B) is inapplicable because Defendant IAS is a citizen of Texas, not Missouri. Notice of Removal ¶ 9. Plaintiffs do not dispute that all primary defendants must be Missouri citizens, but argue that IAS is not a primary defendant because IAS "inconsistently" argued that Plaintiffs do not have standing to sue IAS. Pl. Mem. at 15. As noted above, IAS alleges (and will prove) that Plaintiffs do not have standing to sue IAS. However, accepting the Complaints' allegations as true for purposes of removal, Plaintiffs' allegations in their Complaint plainly establish that IAS is a "primary defendant." The local controversy exception is inapplicable here.

---

[11] Plaintiffs also argue in a footnote that the "obvious" purpose for this provision is to coordinate multiple suits for the Judicial Panel on Multi District Litigation. There is no support for this assertion. *See Evans*, 449 F.3d. at 1163-64 (purpose of provision "is to identify a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others."). This proposed class action is clearly not a "truly local controversy."

## IV. CONCLUSION

For the reasons expressed above, Plaintiffs' Motion for Remand should be denied.

Date: December 22, 2006

Respectfully submitted,

Lawrence R. Goldberg
Christopher A. Pickett
Goldberg Wehrle, LLC
851 North Spoede Rd., Suite 200
St. Louis, Missouri 63141
(314) 513-1717; Fax: (314) 991-8548

David H. Donaldson, Jr.
State Bar No. 05969700
Christopher H. Trickey
State Bar No. 24014720
Graves Dougherty Hearon & Moody, P.C.
401 Congress Ave., Suite 2200
Austin, Texas 78701
(512) 480-5760; Fax: (512) 536-9910

By: _____

ATTORNEYS FOR DEFENDANT
INNOVATIVE AFTERMARKET SYSTEMS, L.P.

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 22nd day of December 2006, the foregoing was mailed, first class, postage prepaid upon the following:

Don M. Downing
Thomas K. Neill
Gray, Ritter, Graham PC
701 Market Street, Suite 800
St. Louis, Missouri 63101

**Attorneys for Plaintiff**

Brian E. McGovern
Bryan M. Kaemmerer
McCarthy, Leonard, Kaemmerer, Owen, McGovern, Striler, & Menghini, L.C.
400 South Woodsmill Road, Suite 250
Chesterfield, MO 63017

**Attorneys for Defendants Suntrup Hyundai Inc.**
**& D.J.S./C.M.S., Inc. D/B/A Suntrup KIA**