UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEPHEN NOWAK, ROBERT NOWAK, and CHRISTINA GORNATI, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> INNOVATIVE AFTERMARKET SYSTEMS, L.P., et al., <br><br> Defendants. | Case No. 4:06CV01622 ERW |

## MEMORANDUM AND ORDER

This matter come before the Court upon Plaintiffs Stephen Nowak, Robert Nowak and Christina Gornati's Motion to Remand [doc. #13].

## I. BACKGROUND FACTS

On October 3, 2006, Plaintiffs Stephen Nowak, Robert Nowak, and Christina Gornati (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, filed a class action Petition against Innovative Aftermarket Systems, L.P. ("Defendant IAS"), Suntrup Hyundai, Inc. ("Defendant Suntrup Hyundai"), and D.J.S./C.M.S., Inc. d/b/a Suntrup Kia ("Defendant Suntrup Kia") in the Missouri Circuit Court for the City of St. Louis, Twenty-Second Judicial Circuit. Plaintiffs' Petition alleges that Defendant IAS's business includes the sale and administration of guaranteed automobile ("GAP") contracts in the State of Missouri. The GAP contract is a "Debt Relief Waiver Addendum" ("Addendum"), under which Defendant IAS

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

agrees to release an automobile purchaser, from liability for any outstanding deficiency[1] they may have on their retail installment contract, loan, or lease, in the event the vehicle is totaled, stolen, or otherwise deemed a complete loss. Automobile dealers, including Defendants Suntrup Hyundai and Suntrup Kia, act as agents for Defendant IAS and sell the GAP contracts to automobile purchasers, who finance a portion of the purchase.

The Petition states that the named Plaintiffs, Stephen and Robert Nowak ("the Nowaks") and Christina Gornati ("Plaintiff Gornati"), are Missouri citizens who purchased cars and the GAP contract from Defendants Suntrup Hyundai and Suntrup Kia, respectively. The petition alleges that the GAP contract sold to Plaintiffs are denominated "G2" on their face and are substantially similar.

The Petition charges, among other things, that the Addendum is a preprinted form adhesion contract that contains deceptive language, in violation of Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020 (2004); that Defendants made affirmative misrepresentations; and that the Plaintiffs' vehicles were involved in automobile accidents and were deemed a total loss, yet Defendant IAS wrongfully reduced the amount of payout or completely denied any payment, in violation of the terms of the GAP contract.

On November 7, 2006, Defendant IAS filed its notice of removal to federal district court, contending that federal jurisdiction is proper, pursuant to the Class Action Fairness Act of 2005

---

[1] According to the Petition, the GAP contract sold to Plaintiffs Stephen Nowak and Robert Nowak ("the Nowak Addendum") and Plaintiff Gornati ("the Gornati Addendum"), defines "outstanding deficiency" as the difference between the actual cash value of the automobile and the net installment sales contract/loan/lease payoff as of the date of the loss, plus the primary automobile insurance deductible amount where applicable as defined in section (2) "Definitions" on the reverse side of the contract. *See* Pls.'Pet. at ¶¶ 6,7.

2

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the requisite elements of minimal diversity and class numerosity are satisfied.

On December 5, 2006, Plaintiffs filed the present Motion requesting that the Court remand this case to the state court from which it was removed. Plaintiffs contend that Defendant IAS cannot satisfy the amount in controversy requisite of $5 million. Alternatively, Plaintiffs argue that this Court lacks jurisdiction based on the "Local Controversy" provision of 28 U.S.C. § 1332.

## II. STANDARD FOR FEDERAL COURT JURISDICTION

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and Statute." *Kokkonen. v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994); *see also Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). A claim in state court may be removed to federal district court if the federal court has "original jurisdiction" over the matter. 28 U.S.C. §1441(a); *Peters v. Union Pacific R. Co.,* 80 F.3d 257, 260 (8th Cir. 1996). On February 18, 2005, Congress enacted CAFA with the purpose of, *inter alia*, expanding the availability of diversity jurisdiction for class action lawsuits. CAFA confers original federal jurisdiction over any class action involving: (1) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs; (2) minimal diversity, *i.e.*, where at least one plaintiff and one defendant are citizens of different states; and (3) 100 or more class members. *See* 28 U.S.C. §§ 1332 (d)(2), (5)(B), (6).

Because the removal statutes impede upon the states' right to resolve controversies in their own courts, such statutes must be strictly construed. *Nichols v. Harbor Venture, Inc.,* 284

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

F.3d 857, 861 (8th Cir. 2002). Although a defendant has a statutory right to remove when jurisdiction is proper, the plaintiff remains the master of the claim and any doubts about the propriety of removal are resolved in favor of remand. *In re Business Men's Assurance Co. of America*, 992 F.2d 181, 183 (8th Cir. 1993); *McHugh v. Physicians Health Plan of Greater St. Louis,* 953 F.Supp. 296, 299 (E.D. Mo. 1997). If a federal court takes action in a dispute over which it lacks subject matter jurisdiction, that action is a nullity. *See American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18 (1951); *Hart v. Terminex Int'l,* 336 F.3d 541, 541-542 (7th Cir. 2003). If "at any time before final judgment it appears that the district court lacks subject matter jurisdiction," the case must be remanded to the state court from which it was removed. 28 U.S.C. § 1447(c).

**III.    DISCUSSION**

As an initial matter, the Court must determine whether the recently enacted CAFA shifts the burden of proof to the plaintiff seeking remand. Traditionally, the party seeking removal and opposing remand bears the burden of establishing federal jurisdiction. *In re Business Men's Assurance Co. of America*, 992 F.2d at 183. Although the text of CAFA is silent regarding the burden of proof on removal, several district courts have reassigned the burden to the plaintiff to demonstrate that federal jurisdiction does not exist. *See Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749, 752 (D.N.J. 2005); *Berry v. Am. Express Pub., Corp.*, 381 F. Supp. 2d 1118, 1122-23 (C.D. Cal. 2005); *Natale v. Pfizer, Inc.*, 379 F. Supp. 2d 161 (D. Mass. 2005), aff'd on other grounds, 424 F.3d 43 (1st Cir. 2005).

The United States Supreme Court and the Eighth Circuit Court of Appeals have not addressed the question of the allocation of the burden of proof under CAFA. However, a court in

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the Eastern District of Missouri held that Congress did not intend to shift the burden from the removing party to the party that is seeking remand. *Judy v. Pfizer, Inc.*, No. 4:05CV1208 RWS, 2005 U.S. Dist. LEXIS 40826, at *5-6 (E.D. Mo. Dec. 14, 2005) ("Congress is deemed to have not intended to change the settled case law on that issue.... Had Congress wished to change which party bears the burden of proof in a removal action under the CAFA it could have explicitly done so."). The Court finds the ruling in *Judy* persuasive and likewise finds that the party opposing remand bears the burden of establishing federal jurisdiction. *See In re Business Men's Assurance Co.,* 992 F.2d at 183; *see also Patterson v. Dean Morris, LLP.,* 448 F.3d 736, 739 n. 2 (8th Cir. 2006 ) (citing *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447-48 (7th Cir. 2005)) ("applying the 'well established' rule that the proponent of removal bears the burden of persuasion, noting that none of CAFA's language 'is even arguably relevant' to the question, and refusing to give force of law to legislative history purporting to shift the burden to the proponent of remand").

Accordingly, in this case, Defendants must establish, by a preponderance of the evidence,[2]

---

[2] The parties also dispute the level of proof Defendants have to meet, to establish that the requirements under § 1332(d) are met. Plaintiffs cite to *James Neff Kramper Family Farm Partnership v. IBP, Inc.,* 393 F.3d 828, 831 (8th Cir. 2005); *In re Minn. Mut. Life Ins. Co. Sales Practice Litigation*, 346 F.3d 830, 834 (8th Cir. 2003); and *Abrego Abrego v. The Dow Chemical*, 443 F.3d 676, 683 (9th Cir. 2006), for the proposition that, when the plaintiff fails to plead a specific amount in damages, the defendant seeking removal must prove by a preponderance of the evidence that the amount in controversy has been met.

On the other hand, Defendant IAS, citing to *The Home Depot, Inc. v. Rickher,* No. 06-8006, 2006 U.S. App. LEXIS 32391, at *2-3 (7th Cir. May 22, 2006), and *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 449 (7th Cir. 2005), argues that the removing party must show a "reasonable probability" that the amount in controversy exceeds the jurisdictional requirement.

A review of the case law in this area reveals some confusion as to the appropriate burden of proof. While Defendants correctly point out that courts have held that the defendant is required to show that it appears to a reasonable probability that the aggregate claims of the plaintiff class are in excess of $5 million, the Eighth Circuit Court of Appeals has not yet

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

that the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; minimal diversity exists; and the number of proposed class members includes at least 100 persons.

The Court must now assess whether the three prerequisites for CAFA jurisdiction are satisfied. With regard to the number of members in the class, neither party disputes the fact that there are more than 100 members of the class, and the petition states that there are hundreds, if not thousands, of members. Additionally, the Court concludes that minimal diversity exists in this case. Plaintiffs' petition alleges that Plaintiffs Stephen Nowak, Robert Nowak, and Christina Gornati are citizens of the State of Missouri. According to the declaration of Ms. Jennifer LePage ("Ms. LePage), the Vice President of Operations of IAS, Defendant IAS is a citizen of the state of Texas, as both its incorporation and principal place of business are located in Texas.

The parties' dispute centers around the amount-in-controversy question. Plaintiffs argue that this Court lacks jurisdiction because Defendant IAS has not satisfied CAFA's amount in controversy requirement. Conversely, Defendant IAS argues that Plaintiffs' allegations and alternatively, the calculations set forth in Ms. LePage's declaration, are sufficient to prove that the amount in controversy exceeds $5,000,000.

---

addressed the standard for determining the amount of controversy requirement under CAFA. Because the Eighth Circuit applies the preponderance of the evidence standard to other class actions where the plaintiff has not specified an amount in damages, the Court will implement that standard here. *See In re Minnesota Mut. Life Ins. Co. Sales Practices Litigation,* 346 F.3d at 834; *see also Neff Kramper*, 393 F.3d at 831 (where there is a question as to the legitimacy of the amount in controversy claimed by the plaintiff, the removing party is required to prove by a preponderance of the evidence that the amount in controversy requisite is met). In any event, as discussed *infra*, the Court concludes that under either, the reasonable probability standard or the preponderance of the evidence standard, Defendant IAS has failed to meet its burden.

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In support of its claim that the amount in controversy requirement has been satisfied, Defendant IAS first submits a calculation based on the allegations in Plaintiffs' petition:

> The required $5,000,000 amount in controversy can be demonstrated by Plaintiffs' allegations alone. Plaintiffs allege that IAS denied the Nowak Plaintiffs payments due of $744.40, and denied Plaintiff Gornati payments due of $6,716.83. *See* Plaintiffs' Class Action Petition ¶¶ 41-47, 64-70. Plaintiffs also allege that these Plaintiffs' claims are typical of the claims of the class. *Id.* ¶ 74. Thus, Plaintiffs have alleged average economic damages of $3,730.62 per class member ($744.40 + $6,716.83 divided by 2). Plaintiffs have alleged that their purported class 'consists of *at least hundreds, if not thousands,* of individuals.' *Id.* ¶ 72 (emphasis added). An average claim of $3,739.l62 per class member means that the class would need to include only 1,341 persons to meet the $5,000,000 jurisdictional amount based on allege economic damages *alone*.

Def.'s Notice of Removal ¶ 7.

Plaintiffs dispute Defendant IAS's calculation, arguing that it would be incorrect to derive an average damage amount for each member of the proposed class, based on the average of the damages claimed by the class representatives, because Plaintiffs have not alleged that the class representatives' damages are typical of the class members. Rather, they allege that the class representatives' claims (both legal and factual) are typical of the class members.

Moreover, Plaintiffs argue that the average claim amount stated in Defendant IAS's first calculation, $3,730.62, contradicts Defendant IAS's evidence from its own files. Plaintiffs claim Defendant IAS submitted two documents that summarize the number of Missouri claims IAS either denied, in full; granted, in full; or granted, in part. Plaintiffs assert, based on Defendant IAS's documents, that from January 2000 to January 2007, 981 claims were made by persons who purchased automobiles and the GAP contract from Missouri dealers. Plaintiffs claim that the average claim amount Defendant IAS denied, in Missouri, was only $784.18, "less than one-fourth of the amount defendant derived from plaintiffs' Petition and almost 30% less than the

7

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

amount indicated in Ms. LePage's declaration." *See* Pls.' Reply Mem. to Def.'s Opp. to Mot. for Remand, 3-4. Plaintiffs argue therefore that Defendants attempt to use the average of the named Plaintiffs' damages to establish the amount in controversy requirement should be rejected.

In *Lodermilk v. United States Bank National Association*, 479 F.3d 994 (9th Cir. 2005), the plaintiff, on behalf of herself and a class of employees, filed an class action under CAFA alleging that the defendant bank failed to promptly pay her wages, upon her termination. In support of its argument that the amount in controversy requirement was met, the defendant multiplied the estimated class size and the number of days of late payment by the state's current minimum wage and the typical eight-hour work day to yield damages far greater than the $5 million CAFA requires. *Id*. at 1001. The court rejected the defendant's calculation reasoning that the defendant provided "thin support for how it arrived at these numbers": 1) the Human Resource employee's declaration, submitted by the defendant, failed to specify which members of the estimated class would qualify as class members; 2) the defendant failed to provide evidence to support the assertion that all class members would be entitled to the maximum damages under state law; and 3) the defendant failed to provide evidence showing the number of days the defendant's wage payments were late. *Id*. The court concluded that "until the parties are able to more definitively ascertain the potential size of the class or the extent of the damages, we can not base our jurisdiction on Defendant's speculation and conjecture." *Id*. at 1002.

By contrast, the Ninth Circuit in *Moda v. Priceline.com, Inc.*, No. 06-56301, 2006 U.S. App. LEXIS 28642, at *4, (9th Cir. Nov. 16, 2006), concluded that the defendant provided sufficient evidence to prove that the amount in controversy exceeded the jurisdictional amount, under CAFA. In that case, the plaintiffs alleged that the defendant was engaging in deceptive

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

advertising of online hotel rooms.  To meet its burden of establishing that the federal court did have subject matter jurisdiction over the class action, the defendant produced concrete evidence of (1) the number of rooms sold to consumers during the relevant time period; and (2) the amount of revenue generated from the room sales.  The court held that both the number of persons affected by the alleged conduct and the total amount in damages was sufficiently alleged to prove that the amount in controversy exceeded the $5,000,000 jurisdictional requirement.

Here, similar to the defendant in *Lodermilk*, the Court believes Defendant IAS's first calculation lacks the detail required to establish the $5,000,000 jurisdictional requirement.  Defendant IAS erroneously relies on the class representatives' average claim amount to calculate the other class members' actual damage amount.  Defendant IAS's calculation is based on conjecture and cannot satisfy the preponderance of the evidence standard.  Likewise, Defendant IAS's assertion that the number of class members may be "hundreds, if not thousands," is insufficient to prove the actual number of class members in this action.  Thus, because Defendant IAS's first calculation offers no evidence indicating the actual number of persons that are potential class members, nor the exact damage amount for each of those persons, the Court finds that Defendant IAS's calculation is based on mere speculation and does not prove, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional requirement.

The above shortcomings also apply to Ms. LePage's supplemental declaration, which Defendant IAS alternatively submits to establish the $5 million threshold.  In her declaration, Ms. LePage claims that 38,150 automobile purchasers bought a GAP Waiver contract in Missouri.  According to Plaintiffs' definition of the class, a GAP Waiver contract holder must have had their claims wrongfully reduced or denied after their vehicle was deemed a total loss, in order to qualify

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

as a class member. *See* Pl.'s Class Action Pet. ¶ 13. Ms. LePage's declaration provides no evidence as to how many of the 38,150 GAP Waiver contract holders have either (1) submitted a claim to collect on their GAP Waiver contract, after their vehicle was deemed a total loss, or (2) submitted a claim that was reduced or denied. Furthermore, Ms. LePage does not specify how many "GAP II" contracts, the contracts at issue here, were sold to those automobile purchasers; the only automobile purchasers that qualify as class members. Finally, Ms. LePage provides no evidence in support of her "good faith estimate" of the financial impact relating to GAP waiver contracts currently in force and contracts that may be sold over the next three years. Defendant IAS cannot rely on speculative future claims to carry its burden. Thus, Ms. LePage's declaration is insufficient to establish, by a preponderance of the evidence, that the CAFA jurisdictional requirement is met.

Finally, Defendant IAS correctly points out that in determining the amount in controversy, both punitive damages and attorney's fees are considered. *Allison v. Security Ben. Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir. 1992) (citing *Bell v. Preferred Life Assur. Society*, 320 U.S. 238, 240 (1943)) (in a class action, punitive damages are included in determining the amount in controversy); *see also Capitol Indem. Corp. v. Miles,* 978 F.2d 437, (8th Cir. 1992) (including attorney's fees in determining the amount in controversy). However, the Eighth Circuit has said it "scrutinize[s] a claim for punitive damages more closely than a claim for actual damages to ensure that Congress's limits on diversity jurisdiction are properly observed." *State of Missouri v. Western Surety Company*, 51 F.3d 170, 173-74 (8th Cir. 1995); *Larkin v. Brown,* 41 F.3d 387, 388-89 (8th Cir. 1994) (same). The court must determine to a legal certainty that Plaintiffs have a valid claim for punitive damages. *Id*.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Here, Defendant IAS claims that attorney's fees in the amount of $350,000 should be included in the amount in controversy. The Court notes that Defendant IAS provides no evidence in support of its calculation and relies solely on prior dealings with Plaintiffs' counsel in a separate class action against IAS. Further, Defendant IAS calculates punitive damages at 200% of the actual damage amount. However, because Defendants have failed to present sufficient evidence to establish the actual damage amount, by a preponderance of the evidence, the Court cannot determine whether the combination of actual and punitive damages and attorney's fees will satisfy CAFA's $5 million threshold. As the court noted in *Lowdermilk*, often, plaintiffs are awarded significantly less than the amount they seek. 479 F.3d at 1002 n.9 (citing cases in which plaintiff sought $17,000,000 and was awarded $1; plaintiffs sought a compensatory award of several hundred thousand dollars and a multimillion dollar punitive award, but the jury only gave each plaintiff $1; plaintiff sought between $150, 000 and $200,000, but was awarded only $17,500; plaintiff sought $2 million in damages, but the jury only awarded $1 million)

Accordingly, the Court concludes that Defendant IAS has failed to prove by a preponderance of the evidence, or with legal certainty, that the amount of controversy meets CAFA's jurisdictional requirements and the case must be remanded to the state court from which it was removed.[3]

---

[3] Because Defendant IAS has not carried its burden of establishing that the amount in controversy is greater than $5 million, under the general jurisdiction requirements of CAFA, the Court concludes it is not necessary to determine whether Plaintiffs are eligible for CAFA's "local controversy" exception. *See* 28 U.S.C. § 1332(d)(4)(A) (providing that a district court shall decline to exercise jurisdiction over a class action in which the plaintiff class and at least one defendant meet certain characteristics that essentially make the case a local controversy).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs Stephen Nowak, Robert Nowak and Christina Gornati's Motion to Remand [doc. #13] is **GRANTED**.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED** for lack of subject matter jurisdiction.

An appropriate Order of judgment shall accompany this Order.

Dated this 23rd day of August, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com